IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

RUSSELL E. KLING, M.D.;                    )
                                           )
                    Plaintiff,             )            2:18-CV-01368-CRE
                                           )
        vs.                                )
                                           )
UNIVERSITY OF PITTSBURGH                   )
MEDICAL CENTER,  UNIVERSITY                )
HEALTH CENTER OF PITTSBURGH, VU            )
T. NGUYEN, M.D.;                           )
                                           )
                    Defendants,            )


## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, Chief United States Magistrate Judge.

I.      **RECOMMENDATION**

        This civil action was initiated by Plaintiff Russell E. Kling, M.D. ("Plaintiff") arising out

of Defendants University of Pittsburgh Medical Center, University Health Center of Pittsburgh

d/b/a UPMC Medical Education's ("Defendant" or "GME") decision not to renew Plaintiff's

appointment in the Integrated Plastic Surgery Residency Program on the basis of his disability or

perceived disability.  This court has subject matter jurisdiction over the controversy pursuant to 28

U.S.C. 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.

§ 1367.

        Presently before the court is GME's motion to dismiss for failure to state a claim pursuant

to Federal Rule of Civil Procedure 12(b)(6) Count 8 of the complaint which relates to Plaintiff's

claim for negligent infliction of emotional distress ("NIED") (ECF No. 49).  For the reasons that

follow, it is respectfully recommended that the motion to dismiss be granted and Plaintiff's claim

for NIED be dismissed with prejudice.

1

## II.     REPORT

### a.     Background

Plaintiff was paid as a resident physician in the Department of Plastic Surgery at GME from July 1, 2014 until June 30, 2017. Amended Complaint (ECF No. 47) at ¶ 12.  Plaintiff successfully completed two years of the residency program. *Id*. at ¶¶ 17-18.  At the end of Plaintiff's second year of residency, in June 2016, GME announced that Vu T. Nguyen, M.D. would replace Joseph E. Losee, M.D. as the Residency Program Director. *Id*. ¶ 23.  Plaintiff's first rotation during his third year of residency was at UPMC Magee-Women's Hospital where he worked under the guidance of Dr. Nguyen. *Id*. at ¶ 24.  On or about August 10, 2016, Dr. Nguyen allegedly initiated a meeting with Dr. Losee and William Tobler, Jr., M.D., Administrative Chief Resident of the UPMC Department of Plastic Surgery to discuss concerns related to Plaintiff's technical performance and lack of medical knowledge. *Id*. at ¶ 25.  During this meeting, Plaintiff was placed on an individualized education plan ("IEP") intended to help improve Plaintiff's performance and referred Plaintiff to the Resident and Fellow Assistance Program ("RFAP") for counseling and supervision. *Id*. at ¶¶ 26-28.  Plaintiff was informed that if his performance did not improve, he might have to repeat his third year of clinical residency. *Id*. at ¶ 29.

On or about September 8, 2016, Plaintiff's reappointment contract with UPMC was finalized for his third year of residency. *Id*. at ¶ 31.  Plaintiff's reappointment agreement was in effect from July 1, 2016 to June 30, 2017. *Id*.  On or about September 14, 2016, Dr. Nguyen requested another meeting with himself, Plaintiff, Dr. Losee and Dr. Tobler to discuss further concerns about Plaintiff's performance. *Id*. at ¶ 32.  At this meeting, Plaintiff was asked about possible substance abuse and/or personal issues, which he denied. *Id*.  Plaintiff was again warned that if his performance did not improve that he may have to repeat the third year of his residency.

*Id.* at ¶ 34.  Plaintiff was notified that if he did not significantly improve his performance, he would be placed on academic probation with the possibility of not progressing to the following clinical year. *Id.* at ¶ 35.  In early October 2016, Plaintiff gave a presentation at a weekly conference and accidentally included a slide from the prior week's presentation. *Id.* at ¶ 36.  That night, Dr. Nguyen called Plaintiff to discuss the mistake and Dr. Nguyen characterized this mistake as "gross negligence" and that Plaintiff's lack of attention to detail could result in a patient's morbidity and/or mortality in the clinical setting. *Id.*

On the morning of October 10, 2016, Plaintiff operated with Dr. Nguyen. *Id.* at ¶ 37. Sometime after, Dr. Nguyen called Plaintiff's wife and asked her numerous personal and probing questions, including questions related to possible drug and/or alcohol abuse. *Id.*  That same day, Plaintiff met with Dr. Nguyen and Dr. Rubin. *Id.* at ¶ 38.  During this meeting, Plaintiff disclosed that he had a learning disability and presented a written letter explaining the disability. *Id.*  No changes were implemented to Plaintiff's IEP and Plaintiff was instructed to schedule appointments with a primary care physician and a psychiatrist to initiate medical evaluations. *Id.* at ¶ 39.  Plaintiff was told that if his performance did not improve, he might not complete the residency program. *Id.* at ¶ 40.  In the minutes of this meeting, it was noted that Dr. Nguyen was investigating Plaintiff's progress at RFAP seeking updates on all matters related to Plaintiff including his learning disability, despite Plaintiff signing a confidentiality agreement with RFAP explicitly prohibiting such disclosures. *Id.* at ¶ 41.  Plaintiff alleges that Dr. Nguyen also attempted to contact the psychiatrist at UPMC who evaluated Plaintiff to obtain Plaintiff's medical information. *Id.* at ¶ 42.

On December 16, 2016, Plaintiff was told to submit documentation supporting his learning disability diagnosis. *Id.* at ¶ 48.  On January 6, 2017, Plaintiff submitted documents pertaining to

a prior accommodation request for the MCAT (Medical College Admission Test). *Id*. at ¶ 51. That same day, Dr. Nguyen request a neuropsychological examination of Plaintiff administered by UPMC. *Id*. Plaintiff underwent the testing which confirmed he had a learning disability. *Id*. at ¶¶ 52-53. The medical report indicated that Plaintiff "ay find a remedial year of highly focused accommodation and interventions will provide adequate learning support to succeed in his chosen medical specialty" or in the alternative he "may benefit from receiving mentorship with the goal of collaboratively reassessing his area of medical specialty or reconsideration of his overall career path." *Id*. at ¶ 54.

On February 24, 2017, Plaintiff was informed that his annual contract would not be renewed beyond the end of his third-year residency. *Id*. at ¶¶ 57-58. Plaintiff continued to work until May 24, 2017, at which time he was placed on administrative leave. *Id*. at ¶ 60. Plaintiff claims that he was not provided an accommodation through the interactive process in his existing position in plastic surgery. *Id*. at ¶ 58. Plaintiff claims that during this time he began seeing a psychologist at RFAP to deal with his emotional distress and mental anguish resulting from Defendants' hostile and retaliatory conduct, including GME's non-renewal of his contract. *Id*. at ¶ 62. Plaintiff alleges that Defendants fabricated his probation status to the Pennsylvania Board of Medicine ("PABM") to retaliate against him until Plaintiff aggrieved his probationary status and alleged discrimination to the UPMC Department of Plastic Surgery and the GME. *Id*. at ¶ 71-107. Plaintiff alleges that Defendants' final letter to the PABM did not mention probation.

Plaintiff initiated this lawsuit alleging claims for, *inter alia*, negligent infliction of emotional distress. Defendants presently move to dismiss that claim only.

    b. <u>Standard of Review</u>

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled.

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004); *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

c.   Discussion

Defendants move to dismiss Plaintiff's claim for negligent infliction of emotional distress by arguing that Pennsylvania law does not recognize an employee/employer or a student/university relationship as recognized fiduciary relationship.

Under Pennsylvania law, to recover under a theory of NIED, "a plaintiff must establish the

elements of a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 198 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011) (opinion issued by a divided Pennsylvania Supreme Court which has persuasive and not precedential value). "The crux of a [NIED] claim is that [defendants] breached some duty they owed to [plaintiff] and that the breach injured [him]." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. 1999).

A claim of NIED is restricted, however, to certain factual situations which include: (1) where the plaintiff and defendant had a contractual or fiduciary relationship; (2) where the plaintiff was subjected to a physical impact; (3) where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) where the plaintiff observed a tortious injury of a close relative. *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. 2012) (citing *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super.2000)). In the instant matter, Plaintiff alleges that the duty owed to him by Defendants arises from a contractual or fiduciary relationship between the parties from his status as an employee and/or student.

The Pennsylvania Supreme Court in *Toney v. Chester Cty. Hosp.*, 36 A.3d 83 (Pa. 2011) (not precedential) outlined the requirements for NIED claims based on contractual or fiduciary duties, limiting such a claim to where "preexisting relationships involving duties that obviously hold the potential of deep emotional harm in the event of breach . . . [and] encompass an implied duty to care for the plaintiff's emotional well-being." *Weiley*, 51 A.3d at 218 (citing *Toney*, 36 A.3d at 95).

*Toney* and courts applying its persuasive authority have only found that this special

relationship exists in limited circumstances, including between an obstetrics physician and patient when diagnosing fetal abnormalities, *Toney*, 36 A.3d at 95, and between an adoption agency and adoptive parents in agency's failure to disclose adoptee's history of sexual abuse which resulted in rape of adoptive parent's other child. *Madison v. Bethanna, Inc.*, 12–CV–01330, 2012 WL 1867459 (E.D.Pa. May 23, 2012).

On the contrary, courts applying *Toney* have found that no special relationship exists under the purview of NIED between a college/university and student or between an employee and employer. *Walsh v. Univ. of Pittsburgh*, 2015 WL 128104, at *15 (W.D. Pa. Jan. 8, 2015) (no special relationship between college and student for NIED claim); *Hershman v. Muhlenberg Coll.*, 2014 WL 1661210, at *4 (E.D.Pa. Apr.24, 2014) (same); *Black v. Cmty. Educ. Centers, Inc.*, 2014 WL 859313 (E.D.Pa. Mar. 4, 2014) (no special relationship between employer and employee for NIED claim); *Adair v. PricewaterhouseCoopers LLP*, 2011 WL 204624, at *4 (E.D. Pa. Jan. 21, 2011) (same). *See also Denton*, 739 A.2d at 578 (no NIED claim between employer/employee due to lack of duty to protect from emotional distress); *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) (no special relationship between a minor student and a private school).[1]

---

[1] Courts have similarly refused to recognize a special relationship for a NIED claim between the following: the government and a deceased marine's next of kin, *LaLoup v. United States*, 92 F. Supp. 3d 340, 352 (E.D. Pa. 2015); a lender and borrower, *Hawkins v. Fed. Nat. Mortgage Ass'n*, 2014 WL 272082 (E.D.Pa. Jan. 23, 2014), *Grimaldi v. Bank of Am.*, 2013 WL 1050549 (M.D.Pa. Mar. 14, 2013) and *Healey v. Fargo*, 2012 WL 994564 * n. 13 (C.P. Lackawana, March 20, 2012); a union and its members, *Yarnall v. Philadelphia Sch. Dist.*, 2013 WL 5525297 (E.D.Pa. Oct. 7, 2013); a casino and its patron, *Okane v. Tropicana Entm't, Inc.*, 2013 WL 56088 (E.D.Pa. Jan. 3, 2013); an ethnic group organization and its member, *Emekekwue v. Offor*, 2012 WL 1715066 (M.D.Pa. May 15, 2012); an airline and its passenger, *Shulick v. United Airlines*, 2012 WL 315483 (E.D.Pa. Feb. 2, 2012); a hospital and son of decedent father who died in the hospital, *Weiley*, 51 A.3d at 218; and a contractor and a building owner, *Trotta v. Luckinbill*, 2014 WL 353817 (C.P. Lycoming January 13, 2014).

Here, Plaintiff's claim for NIED against Defendants is based solely on his relationship as a medical resident which is a hybrid student/university and employee/employee relationship with Defendants. Under the applicable case law, the relationship between Plaintiff and Defendants as a student/university and/or employee/employer or any combination of the two, without more, does not hold the potential of deep emotional harm in the event of a breach and implies no duty to care for Plaintiff's emotional well-being. Accordingly, it is respectfully recommended that because this special relationship does not exist, Defendants' motion to dismiss be granted and Plaintiff's claim for NIED be dismissed with prejudice.

    d. <u>Conclusion</u>

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **May 22, 2020** to file objections to this report and recommendation. Unless otherwise ordered by the District Judge, responses to objections are due fourteen days after the service of the objections. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: May 8, 2020.
                                                Respectfully submitted,
                                                s/ Cynthia Reed Eddy
                                                Chief United States Magistrate Judge