IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| RUSSELL E. KLING, M.D.; | )<br>)<br>) 2:18-CV-01368-MJH |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| UNIVERSITY OF PITTSBURGH MEDICAL CENTER, UNIVERSITY HEALTH CENTER OF PITTSBURGH, VU T. NGUYEN, M.D.; | )<br>)<br>) |
| Defendants, | |

**Memorandum Opinion**

This case was referred to United States Magistrate Judge Cynthia Reed Eddy for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A) and (B), and Rule 72 of the Local Rules for Magistrate Judges. On May 7, 2021, Judge Eddy issued a Report and Recommendation (ECF No. 101) recommending that the Court grant Defendants, University of Pittsburgh Medical Center, University Health Center of Pittsburgh d/b/a UPMC Medical Education's, Motion for Summary Judgment (ECF No. 84) and enter judgment in favor of Defendants. The parties were informed that written objections to the Report and Recommendation were due by May 21, 2021. Dr. Kling filed timely written objections, and Defendants filed a response to said objections. (ECF Nos. 102 and 105). Following *de novo* review, Judge Eddy's Report and Recommendation will be adopted, and Defendants' Motion for Summary Judgment will be granted.[1]

---

[1] Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part: "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## I. Background

Because the Court writes primarily for the parties, the Court provides only a condensed background here. The facts of this case are provided in detail in Judge Eddy's Report and Recommendation. (ECF No. 101).

Dr. Kling initiated the instant action, alleging that Defendants 1.) discriminated against him based on his disability by terminating him from the Residency Program in violation of the Americans with Disability Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), the Rehabilitation Act Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("RA") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA") (Count I); 2.) retaliated against him for requesting reasonable accommodations and filing a grievance in violation of the ADA, RA and PHRA (Count VI); 3.) failed to accommodate him in violation of the ADA, RA and PHRA (Counts II and III); 4.) made an illegal medical inquiry in violation of the ADA and the RA (Count IV); 5.) illegally disclosed Plaintiff's handicap or disability in violation of the PHRA (Count V); and 6.) tortiously interfered with prospective contract in violation of Pennsylvania law (Count VII).

Judge Eddy has recommended that Defendants' Motion for Summary Judgment be granted in its entirety. Dr. Kling's objections are limited to issues in Counts I, II, III, and VI. He offers no objections to Judge Eddy's recommendation to grant summary judgment as to Counts IV, V, and VII.[2]

---

[2] "[T]he failure of a party to object to a magistrate's legal conclusions may result in the loss of the right to de novo review in the district court." *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987). As a matter of good practice, however, the Third Circuit expects courts to "afford some level of review to dispositive legal issues raised by the report." *Id.* at 878.

Dr. Kling raises four specific objections to Judge Eddy's Report and Recommendation. First, Dr. Kling argues that there is a disputed issue whether Dr. Kling was qualified to perform the essential functions of his residency with reasonable accommodations. Dr. Kling also objects to Judge Eddy's finding that Defendants did not fail to accommodate Dr. Kling's alleged disability. Furthermore, he challenges Judge Eddy's determination that the Graduate Medical Education (GME) program should not be afforded heightened deference in its assessment of Dr. Kling's medical competency. Finally, Dr. Kling argues that Judge Eddy erred in determining that retaliatory animus did not play a role in GME's decision-making process and that it did not have a determinative effect on the outcome of that process.

## II.  Discussion

### A.  Dr. Kling's Qualifications

Dr. Kling argues that "[t]he record evidence clearly establishes that there was substantial disagreement among UPMC performance evaluating faculty members whether Dr. Kling, could and was performing the essential functions of a third-year resident in the Plastic Surgery Residency Program," and that Chief Magistrate Judge Eddy improperly weighed this "disputed evidence." (ECF No. 102 at p. 2-3). Defendants contend that Dr. Kling's reliance on "cherry-picked evaluation references" fails to support that there are genuine issues of fact as to whether Dr. Kling was qualified. Instead, Defendants maintain that the record supports that GME's evaluation process sufficiently prescribed the requisite level of competence required for a resident to proceed in the Residency Program. Defendants note that, under the Clinical Competency Committee's (CCC) evaluation system, no single reviewer or single rotation performance is responsible for a resident's performance assessment. Likewise, Defendants assert that Dr. Kling's raw test scores, which were substandard relative to national test takers, fail

3

to rebut the negative assessments by Drs. Nguyen and Losee. Defendants specifically maintain that Dr. Kling does not dispute that he was observed having difficulty, "cutting on a straight line or closing a simple laceration."

To establish a prima facie case of disability discrimination under the ADA, the employee must show that he (1) is a disabled person within the meaning of the ADA; (2) is qualified to perform the essential functions of his job, with or without reasonable accommodations, and (3) has been subjected to an adverse employment action as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir.2010). In determining whether an employee is "qualified," i.e., can perform the essential job functions with or without reasonable accommodation, the employee has the burden to show he "satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires" and he "with or without reasonable accommodation, can perform the essential functions of the position held or sought." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998) (en banc); *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir.2002). The court must first address whether the employee "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." and if he does, the court can then consider whether the employee can perform the essential job functions with or without accommodation. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). The determination of whether an employee is qualified to perform the essential functions of the position "is made at the time of the employment decision." *Id*. As it relates to employment in a medical residency, another court explained: "a medical residency is primarily an academic enterprise . . . [and] 'is distinct from other types of employment in that the resident's "work" is what is academically supervised and evaluated. . . [T]he primary purpose of

a residency program is not employment or a stipend, but the academic training and the academic certification for a successful completion of the program." *Brown v. Hamot Med. Ctr.*, No. CIV.A. 05-32E, 2008 WL 55999, at *8–9 (W.D. Pa. Jan. 3, 2008), aff'd, 323 F. App'x 140 (3d Cir. 2009) (quoting *Davis v. Mann*, 882 F.2d 967, 968-969 (5th Cir.1989)). "Successful completion of the residency program depends upon subjective evaluations by trained faculty members into areas of expertise that courts are poorly equipped to undertake in the first instance or to review[.]" *Davis*, 882 F.2d at 969.

In the Report and Recommendation, Judge Eddy determined that the record is undisputed that Dr. Kling was not qualified to perform the essential functions of his position. Dr. Kling's poor performance evaluations completed by not only Dr. Nguyen but also other physician faculty members supported this conclusion. Judge Eddy also correctly observed that the Plaintiff cherry-picked favorable reports while he ignored negative reports from those same evaluations. Such cherry-picked evidence did not diminish the undisputed record evidence that Dr. Kling was not qualified to remain in the Residency Program. Accordingly, Judge Eddy determined that no jury could reasonably conclude that Dr. Kling's poor evaluations were unsubstantiated. Therefore, Judge Eddy concluded that because Dr. Kling was not qualified, he failed to meet the second element of the prima facie case of discrimination, and she thereby recommended that Defendants' motion for summary judgment be granted on Plaintiff's disability discrimination claim (Count I).

Following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Dr. Kling could support a prima facie claim of disability discrimination. This Court finds no error in Judge Eddy's determination.

### b. Accommodation

Dr. Kling next objects to Judge Eddy's finding that Defendants did not fail to accommodate Dr. Kling's alleged disability. He specifically argues that he submitted a written request for accommodations related to a learning disability that would permit a remedial year, and Defendants had provided this type of remediation to other residents. Dr. Kling also requested a transfer as an accommodation. Dr. Kling further contends that a reasonable accommodation is best determined through an interactive process, but that Defendants failed to have Dr. Kling participate in such process.

Defendants respond that Dr. Kling failed to demonstrate that the proposed accommodations of a remedial year would have allowed him to perform the essential functions of his position. Defendants also maintain that Dr. Kling failed to demonstrate that there were available, funded positions to which he could be transferred and that he could perform the essential functions, with or without reasonable accommodations, and that these positions were at the equivalent or similar position as his position.

To state a failure-to-accommodate claim in violation of the ADA, Plaintiff must allege: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009). Plaintiff can show that Defendants refused to make reasonable accommodations by refusing to provide him with the proposed reasonable accommodation or by failing to engage in the interactive process with Plaintiff after he requested an accommodation

although a reasonable accommodation was possible. *Solomon v. Sch. Dist. of Philadelphia*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012).

Generally, the issue of whether a reasonable accommodation exists in a failure-to-accommodate claim in the employment context presents a question of fact. *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 614 (3d Cir. 2006). "In deciding whether a genuine issue of material fact exists regarding the reasonableness of the requested accommodation, [the court] first examine[s] whether [Plaintiff] has made a facial showing that [his] proposed accommodation is possible[,]"and "would have allowed him to perform the essential functions of the job." *Bender v. Norfolk S. Corp.*, 31 F. Supp. 3d 659, 666 (M.D. Pa. 2014) (citations omitted). If Plaintiff meets that prima facie showing, "the burden shifts to [Defendants] to prove, as an affirmative defense, that the accommodations requested by [Plaintiff] are unreasonable, or would cause an undue hardship on the employer." *Id*. (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

If the requested accommodation includes the employee's request to be transferred to another position, Plaintiff must "demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [his former job]." *Gaul*, 134 F.3d at 580–81.  Plaintiff "must also demonstrate as part of his facial showing that the costs associated with his proposed accommodation 'are not clearly disproportionate to the benefits that it will produce.' " *Gaul*, 134 F.3d at 580-81 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). Costs are considered "financial as well as administrative burdens on a company." *Gaul*, 134 F.3d at 581. If Plaintiff meets the prima facie showing, the burden shifts to Defendants to prove as an affirmative defense "that the accommodations requested by the

7

plaintiff are unreasonable, or would cause an undue hardship on the employer." *Shiring*, 90 F.3d at 831.

Judge Eddy addressed each of Dr. Kling's requested accommodations separately. First, as to a remedial year, Judge Eddy determined that Dr. Kling failed to meet his burden of proving that a remedial year would have rendered him able to perform the essential functions of this job. In support, Judge Eddy noted that a Neuropsych Assessment suggested that Dr. Kling "may" find a remedial year helpful. The Assessment also suggested that no amount of remediation could help Dr. Kling perform the essential functions of his residency and eventual job as a plastic surgeon. The Assessment concluded that Dr. Kling should reassess his area of medical specialty or reconsider his overall career path. Judge Eddy concluded that the Neuropsych Assessment's reference to a remedial year alone did not conclusively determine that a remedial year would allow Dr. Kling to perform the essential functions of his job and does not contradict Defendants' decision that a remedial year would be ineffective at allowing Dr. Kling to perform the essential functions of his job. Judge Eddy also determined that it was not relevant that physician faculty members were unsure how Dr. Kling's learning disability affected his surgical technique because the record reflects that Dr. Kling had serious performance issues regardless of whether faculty members speculated about their cause. Two faculty members testified that they were not experts in Dr. Kling's diagnosed learning disability and were not asked to opine on Plaintiff's specific learning disability. As a result, Judge Eddy determined that their testimony was not relevant to determine whether Plaintiff could perform the essential functions of his job. Thus, Judge Eddy concluded that Dr. Kling did not meet his burden to demonstrate that a remedial year would have rendered him able to perform the essential functions of his job, and she thus recommended that

summary judgment be granted in favor of Defendants as to Dr. Kling's claim related to failure to accommodate for not providing him with a remedial year.

As to an accommodation to be transferred, Judge Eddy noted that Dr. Kling did not respond to Defendants' argument that summary judgment should be granted in their favor on Plaintiff's failure-to-accommodate claim as it relates to his request to be transferred . She noted that Dr. Kling had not made a facial showing that there were vacant, funded positions whose essential duties he could perform, with or without reasonable accommodation, and that these positions were at an equivalent level or position as his former job. *See Gaul*, 134 F.3d at 581.

She also concluded that no jury could reasonably conclude that Defendants failed to engage in the interactive process in good faith. After Plaintiff informed Defendants of his learning disability, Defendants sought to learn more about Plaintiff's disability by requesting medical documentation about his disability, continued his placement in a remediation program with greater mentorship, had Plaintiff undergo a Neuropsych Assessment to understand his disability and its impact on Plaintiff's performance issues, delayed its annual review and performance evaluation of Plaintiff until after the results of the Neuropsych Assessment were available, and during his annual performance review, it seriously considered whether a remedial year would benefit Plaintiff in correcting his performance issues – all of which is evidence that Defendants engaged in the interactive process in good faith. Plaintiff supports his entire bad faith argument by pointing to the fact that he was not involved in the discussion among the CCC regarding his non-renewal. "[N]othing requires employers to include the employee and/or the employee's physician in every discussion of possible accommodations or evaluations as part of engaging in the interactive process." *Parker*, 309 F. App'x at 562.  In considering the record as a

whole, the fact that Defendants did not include Plaintiff in discussions of his evaluation process alone is not enough to support a finding of bad faith in the interactive process.

Moreover, even if Defendants' failure to include Plaintiff in the discussions could constitute bad faith in the interactive process, Plaintiff must still submit evidence that he can be reasonably accommodated. "The ADA . . . is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made." *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir.1997). "It is the employee's burden to show that accommodations existed that would have rendered [him] capable of performing the essential functions of the job." *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617–18 (W.D. Pa. 2014) (quoting *Stanley v. Lester M. Prange, Inc.*, 25 F. Supp. 2d 581, 584 (E.D.Pa. 1998)). "Summary judgment can be granted in favor of the employer where the employee's proposed accommodations would be clearly ineffective." *Bielich*, 6 F. Supp. 3d at 617-18. Dr. Kling has not met his burden to show that any accommodations would have rendered him capable of performing the essential functions of his job as a medical resident in the field of plastic surgery.

Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Dr. Kling could support a failure to accommodate claim. This Court finds no error in Judge Eddy's determination.

  **c.**  **Heightened Deference**

Dr. Kling next objects that the Court should not afford GME a heightened deference in its assessment of Dr. Kling's medical competency. Defendants' respond that heightened deference applies because courts have acknowledged that they are ill-equipped to undertake a review of the subjective evaluations by trained faculty members in their areas of expertise for purposes of

successful residency program completion. Defendants contend that, in this case, Dr. Kling has furnished no support to abandon the heightened deference standard, and therefore, the Court should deny his objection. The Defense raised the issue of a heightened deference standard when it argued on summary judgment that Dr. Kling could not meet his prima facie case of disability discrimination particularly as to the qualification element. Judge Eddy's Report and Recommendation, as discussed above, found that Dr. Kling did not meet the qualified element necessary to state a prima facie case for disability discrimination. However, Judge Eddy's analysis of that element omitted discussion of any heightened deference. Rule 72 only requires the district judge to address the recommended disposition and not objections to matters outside the magistrate judge's disposition. *See* Fed. R. Civ. P. 72(b)(3). Nevertheless, the Court will briefly address the objection.

"A medical residency is a hybrid position in which the resident is both a student and employee. However, it is primarily a learning position ...." *Abdel-Raouf v. Yale Univ.*, No. 12-cv-776, 2015 WL 687440, at *3 (D. Conn. Feb. 18, 2015) (citation omitted). "Where an employment relationship is primarily educational, courts ... have recognized that judges and juries are singularly unequipped to review judgments about professional qualification." *Id*. (concluding that plaintiff did not prove he was qualified to be promoted to a third-year resident because he offered no evidence to establish that he was qualified for promotion except to dispute every less-than-laudatory comment made by his attending physicians); *Nigro v. Va. Commw. Univ./Med. Coll. of Va.*, 492 F. App'x 347, 360 (4th Cir. 2012), 492 F. App'x at 359 (reiterating that "courts are particularly ill-equipped to evaluate academic performance"). The Third Circuit applied this heightened deference in *Hankins v. Temple Univ. Health Scis. Ctr.*, 829 F.2d 437, 443 (3d Cir. 1987), in which the plaintiff, a medical fellow, argued that the faculty and staff at

11

the hospital were mistaken in their assessment of her medical skills and their decision to terminate her fellowship. *Id*. The plaintiff in Hankins did not meet the standards set by Temple Medical School for continuation in its fellowship program after it was determined that she was deficient in clinical skills and judgment, demonstrated reluctance to respond to constructive criticism and abandoned a patient under her care on one occasion. *Id*. The Third Circuit noted that "[u]niversity faculties ... must have the widest discretion in making judgments as to the academic performance of their students." *Id*. (citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (Powell, J., concurring) ). As such, the plaintiff failed to demonstrate that the stated reason for her termination—inadequate performance—could be found to be a pretext for discrimination, and the Third Circuit affirmed the district court's grant of the defendant's motion for summary judgment. *Id*. at 441.

Here, the context of Dr. Kling's enrollment in a medical residency program raises a presumption of a heightened deference. As discussed above, the record has ample support that both subjective and objective assessments supported Defendants' decision not to renew Dr. Kling's residency. In contrast, the record does not support that Defendants' decision was disguised as discriminatory conduct. Therefore, the Court would have no basis to reject a heightened deference standard had Judge Eddy's Report and Recommendation included that as a basis to find that Dr. Kling had failed to prove a prima facie case of disability discrimination.

**D. Retaliatory Animus**

Finally, Dr. Kling objects because he argues that retaliatory animus played a role in GME's decision-making process and had a determinative effect on the outcome of that process. In particular, he contends that Judge Eddy committed legal error by holding Dr. Kling to a higher quantum of proof than required by the Third Circuit to establish a prima facie case of retaliation.

Dr. Kling argues he has produced sufficient evidence to raise the inference that the protected activity was the "likely reason" for the adverse employment decisions. Accordingly, Dr. Kling argues that he has adduced the required quantum of evidence as part of his prima facie case of retaliation, to survive a motion for summary judgment.

Defendants contend that Dr. Kling failed to satisfy his evidentiary burdens to survive summary judgment. According to Defendants, Dr. Kling misunderstands applicable legal standards, and his scant evidentiary support is unavailing. Thus, Defendants maintain that Dr. Kling has failed to present any evidence to support a prima facie case of retaliation on the basis, i.e., that his request for a disability accommodation is the but-for cause for GME's decision not to renew his appointment, to place him on probation, or to place him on administrative leave. Even had Dr. Kling met his prima facie burden, Defendants contend that they had legitimate, non-discriminatory reasons not to renew his appointment, to place him on probation, and to place him on administrative leave.

Dr. Kling's general objections to Judge Eddy's findings on retaliation presents some confusion because the Report and Recommendation found that Dr. Kling had met his prima facie burden to support a retaliation claim. (ECF No. 101 at p. 20-21). As to those activities that met the prima facie burden, Judge Eddy found that Defendants produced a legitimate non-discriminatory reason for the adverse employment actions of Dr. Kling's (1) nonrenewal/termination from the Residency Program; (2) being placed on probation; and (3) being placed on administrative leave. *Id*. Further, Judge Eddy concluded that Dr. Kling had not presented sufficient evidence to support a finding that the legitimate non-discriminatory reasons were pretextual. Upon review of those conclusions, this Court finds that Judge Eddy properly

13

determined that, even having met a prima facie burden for those adverse actions, said actions were not retaliatory.

Judge Eddy, however, found that Dr. Nguyen's negative reference letter was not an adverse employment action that would support a prima facie retaliation claim. Because Dr. Kling's objections are limited to Judge Eddy's prima facie retaliation analysis, this Court will review the portion of the Report and Recommendation on this issue.

In Plaintiff's claim for retaliation, he must establish a prima facie case by proving that he (1) engaged in a protected activity; (2) his employer took an adverse employment action against him either after or contemporaneously with the protected activity; and (3) a causal connection between the protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

As to the second element, which is the sole issue on Plaintiff's objections to the R&R, Dr. Kling argues that he suffered an adverse employment action when Dr. Nguyen allegedly issued a letter to prospective employers that included information that Plaintiff had been placed on probation and that Kling had a learning disability and deficits in visual spatial orientation. An adverse employment action is one that is serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment. *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001). "Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Langley v. Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006) (unpublished). With regard to Dr. Nguyen's letter, "[a] negative reference given by a former employer to a prospective employer can be an adverse employment if it impacts a former employee's future employment."

14

*Downs v. Schwartz*, No. CIV.A. 14-630, 2015 WL 4770711, at *11 (E.D. Pa. Aug. 12, 2015) (citations omitted).

Judge Eddy noted that Dr. Kling implied that Dr. Nguyen sent letters to multiple prospective employers and failed to timely respond to prospective employers' inquires, but he cited no record evidence supporting his assertions. Rather, Judge Eddy determined that the record evidence showed that only one of Dr. Kling prospective employers, All Med Medical & Rehabilitative Centers, received a "negative" reference letter from Dr. Nguyen. Dr. Kling cited no record evidence that this letter impacted his future employment with All Med Medical & Rehabilitative Centers. Judge Eddy concluded that Dr. Kling relied on unsupported assertions, speculation or conclusory allegations, and thus, she recommended that summary judgment be granted in Defendants' favor for Plaintiff's retaliation claim related to Dr. Nguyen's negative reference letter.

Following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Dr. Kling could support a prima facie claim retaliation claim related to Dr. Nguyen's negative reference letter. Dr. Kling's objections do give this Court reason to disturb Judge Eddy's findings. Moreover, this Court finds no error in Judge Eddy's determination.

E.   **Counts IV, V, and VII.**

As referenced above, Dr. Kling raised no objections to Judge Eddy's Repot and Recommendation with regards to Counts IV, V, and VII. Nevertheless, following de novo review of the same, the Court finds no reason to disturb Judge Eddy's recommendation that summary judgment should be entered against Dr. Kling on those three counts.

### III.     Conclusion

Following consideration of the foregoing, Judge Eddy's Report and Recommendation (ECF No. 101) dated May 7, 2021, will be ADOPTED as the Opinion of this Court. Defendants' Motion for Summary Judgment will be GRANTED. Judgment will be entered in favor of Defendants and against the Plaintiff. A separate order will follow.

BY THE COURT:

MARILYN J. HORAN
United States District Judge